Mudge v. Zugalla Yes, give us just a second while the courtroom clears. That's fine. Thank you, Ms. Clark. Please. Good morning, Your Honors. Jennifer Clark for Appellants. In this suit, Judge Heard denied defendants qualified immunity because they sent a letter to Plaintiff's current employer stating, truthfully, that the New York State Department of Education had commenced an investigation. Wait, wait. You say, truthfully? I thought it was not technically an investigation. It was an investigation, Your Honor. The letter is truthful, that they had opened an investigation into him. They requested that he send along his, that the school district send along. Help me out. I thought that the word investigation, in this precise context, has a specific meaning that includes having good cause to do the investigation. Am I just off in 34th Street there? Your Honor, under the regulation that covers an investigation like this, a moral character investigation for someone holding a state educator's license, there's no good cause requirement that, it does say that there would be an indication. And the indication that defendants were working with was that he had been hired by a new district on the heels of his suspension for sexual grooming. But Your Honor, I think whether or not the investigation, whether the investigation was properly opened or not under the state reg is neither here nor there when it comes to procedural due process or to defendant's entitlement to qualified immunity. We're also dealing here with stigma plus, are we? That's true, which is a creature of due process, Your Honor. Okay. All right. But it's the stigma part that I think I'm talking about, and the question whether using those words, what do you do, cast a stigma, I'm not sure how you throw a stigma, but. A few responses to that, Your Honor. First, it was an investigation, so to the extent that what Your Honor is picking up on is that by stating it was an investigation, they were saying something false. That's not true. It was an investigation that was immediately closed when they saw his employment materials and saw that the question had not been asked and therefore he had no duty to disclose it. So it was an investigation that was opened and closed immediately thereafter, Your Honor. Did they tell anybody it was closed? No, Your Honor. They did not tell anybody that it was closed. And with regards to how that relates to defendant's entitlement to qualified immunity, it's much more standard practice among investigators to not loop back and tell whoever has received a subpoena or any other forms of investigation that it hasn't closed. So to the contrary, there would be no precedent for that. Certainly a reasonable government official would not be under the impression that constitutional law required them to loop back and close because thousands of subpoenas and other investigatory tools are issued every day without anyone looping back and saying that the investigation has closed without incident. So certainly there's no clearly established right to that kind of thing. And just to get to this question, as it seems, I'm not sure precisely which is concerning, Your Honors, but the stigma plus claim, with regards to the stigma part of it, there was no false statement and it was an investigation. And with regards to the plus part, the plus was so far removed from the alleged stigma that there's no violation of- Can I ask you a question? Yes. Which may turn out to be, let me just ask the question. Just supposing that you were to win everything except stigma plus and you were to lose on stigma plus. Are we talking about with regards to qualified immunity? Yes. Yes. Yes. Yes. What happens then? Do you do a name clearing hearing when you've already cleared ... I don't understand what happens after you have lost, if you have lost on qualified immunity. What relief does the plaintiff get? What relief would the plaintiff get in this case? Yeah. Well, this is at the summary judgment stage. So it would return to the district court for further proceedings. What do you get out of a stigma plus case? Supposing the plaintiff wins and they go to a jury and they win, and then what do they get? They would get- A name clearing hearing? I don't believe that they would get a name clearing hearing, nor do I think that there's any name to be cleared in this case. I'm just curious. I don't mean to take up your time to satisfy my curiosity, although we do that sometimes, but we hear about stigma plus cases all the time. I don't know if I've ever seen one that was successful, but here's a ... This is an interesting case, maybe in this one, and I just wonder, I've heard the words name clearing hearing. You're entitled to a hearing to clear your name. Well, if you say, if the defendant says, you don't need a hearing, we already said you didn't do it, do you have any idea what the . . . Perhaps that's a question better suited for the plaintiff in this case, because I'm not sure what he would . . . Fair enough, but you got up first, Soyuz. Well, poor me then. I'm not sure, Your Honors. I believe that plaintiff would seek the damages that he seeks for his claimed reputational damage, but since Your Honors seem to see a potential problem with the stigma plus claim, I just want to reiterate that the best argument that plaintiff has put forth would be defamation by implication, because it implies that perhaps there was something done. The clearly established case law of this court does not support, in the stigma plus realm, a defamation by implication claim. If you look to this court's . . . That's a state law claim. Yes, Your Honor, that would be a . . . Yes, exactly. If you look to this court's stigma plus jurisprudence, we have straightforward a defamation. One case, for example, where there was a public statement released at the same time as an indiscriminated, saying that he was unable to provide for the basic safety of the children in his care, and therefore, he had to be fired. Here we have a letter that makes a truthful statement. I believe what Your Honor is picking up on is that the statement implies that perhaps there was wrongdoing, but any opening of an investigation could potentially imply that there had been wrongdoing. That's why an investigation exists. I'm not getting at something. I don't know what my colleagues think about this, and I'm trying to figure out, supposing they think this, then what's the next step? I understand. I understand. Well, you know . . . In other words, poor me. Well, in this case, Your Honor, what the district court relied upon in denying qualified immunity were two other district court cases that had found that it was . . . that certain extreme circumstances could perhaps lead to an effective revocation of a state-issued license in which someone has a property interest. Here we have no actual revocation, and the alleged effective revocation is neither clearly established law of the circuit, nor do the circumstances even come close to the circumstances laid out in those district court opinions, and I'll reserve the rest of my time. Let me ask you, before you sit down, Ms. Clark. Yes. What's the closest case that you're aware of out of this circuit that would guide this . . . would guide the investigator's determination of whether they should or should not have done what they did? Your Honor, perhaps I can think about that, and I can proffer something on rebuttal, because nothing comes to mind. I apologize. Well, as you're sitting there, think about that as one of the things, at least. Mr. Deinhardt, good morning. Good morning, Your Honors. Dein or Dean? Deinhardt. Yes, you got it right. Thank you. Good morning, Your Honors. I represent the plaintiff, Randy Mudge. In this case, the appellants appeal a dismissal . . . or a denial of their motion for summary judgment on their qualified immunity claim. What would be the clear . . . what case would you have had the investigators look at to determine what was clearly established, and therefore bearing on . . . or therefore controlling their behavior in this case that they veered away from and violated? Well, Your Honor, there are a number of cases. Two that are relevant are Supreme Court cases, Bell v. Bernsen and Morrissey v. Brewer, which talk about the type of property interest an individual has in a license. So there's a bit of a synthesis going on in the sense that . . . Did he lose his license here, or wasn't he just an at-will substitute teacher who lost that position? Well, within the scope of rights that New York State gives to an individual when they have the right to use that license. So it's not just . . . Well, he can't use it. He just can't use it in Middleburg, if I'm not wrong. Well, that's right to some extent, Your Honor. But the interference with the use of his license without any kind of procedural guarantees is still a diminution of that property, right? Any diminution is enough? If it's unreasonable government action that diminishes the person's property right, yes. Yeah, but where's the guidance that what occurred by the writing of the letter, the making of the inquiry, is unreasonable? Well, Your Honor, and this also goes to the stigma plus. I think it answers both questions. The letter itself, I have it in front of me. It's on page 130 of the appendix. It says, This office has commenced an investigation against Randy A. Mudge. Pursuant to department authority to investigate such matters, as set forth in 8 New York C.R.R. section 83.2 . . . I'm requesting that you provide the office with the documents. I'm paraphrasing there at the end. Part 83 of 8 New York C.R.R. says that an investigation may only be opened upon information in the possession of any person indicating that an individual holding a teaching certificate has been convicted of a crime or has committed an act which raises a reasonable question as to the individual's moral character. So when the Department of Education sends this letter to the principal, or sorry, the Superintendent Weaver at Middleburg Central School District, and says there's an investigation pursuant to Part 83 of 8 New York C.R.R., that has necessary language attached to it that would instruct the superintendent. Okay. So you're saying the recipient of it would have known what that meant? Yes, Your Honor. What was he supposed to do? What was the investigator supposed to do, or the prosecutor, when somebody calls and said, This guy who just got suspended for a year for grooming a couple of girls when he was at a high school is applied to my school district. I don't think they know about it. Did he disclose it to them? What's the investigator supposed to say? Go talk to Middleburg. I don't know. It's not my job. Even though I just convicted this guy, and we got him suspended for a year from teaching anywhere for that conduct. What's he supposed to do? Well, Your Honor, that goes to another related due process issue in this. Mr. Mudge, he went through a hearing. He was, as the record indicates, was convicted of a grooming charge. He had not actually had sex with students while they were in high school. He waited until the month after they graduated, right, for both of them? Fair enough, yes, Your Honor. He went through a hearing. He received a sentence. It was a one-year suspension. He served that suspension. And that suspension of his license, his license was reinstated, so he should have every right to continue using his license after he's served that suspension. He does, but you're not saying that a school board or the hiring authority examining who's going to come in as a teacher in that district doesn't have the right to know about his suspension? I'm sorry, who would have the right? You are not saying that a hiring authority subsequent . . . considering his application subsequent to suspension doesn't have a right to know about the very thing for which he was suspended, are you? No, not at all, Your Honor. All right, so back to Judge Droney's question, what's somebody to do when there's an inquiry about, hey, did you know about that? Well, there's a substantive difference between the investigator saying, hey, by the way, I heard you hired Randy Mudge. Did you know that he has a suspension, as opposed to saying, we've opened an investigation, which is based on information that raises a question of moral character? It all circles around the word investigation because it has a technical meaning, and had they used the word inquiry or we are considering opening an investigation, that would have been okay. We're trying to determine whether to open an investigation into the following charges. That would have been okay. Yes, Your Honor, and I think that's an important distinction, though, because by implying that there's an investigation, it implies that there's new facts, and especially in light of Mr. Mudge's previous suspension, the implication is then, of course, that he's done something similar to what he was accused of in the past. What's the case that clearly establishes to the two defendants here that they shouldn't have done that under the Constitution? Well, so it's actually a New York State law case that establishes it under the constitutional scheme or defined by New York State law. How about a Second Circuit case or a United States Supreme Court case for the qualified immunity test? Where are those cases? There's two district court cases that the district court here cited. You cite one, a Second Circuit case where the person had tenure. Where were these two investigators supposed to know that, gee, you can't do it? It's clearly established in the Second Circuit that you can't send this fax over to Middleburg because it violates his due process rights. Where is that case? Your Honor, I would again point to the two Supreme Court cases that I mentioned earlier, Bell and Morrissey. In Bell, the case involved an individual who had a driver's license whose driver's license was taken away without a hearing, and the court held that you can't do that constitutionally because that individual has a property interest in the driver's license. No, Your Honor, and that gets to Morrissey. In Morrissey, the issue was parole, where an individual is granted parole, and subsequent to his parole terms being set, they tried to alter the parole terms. And it's that alteration of terms that creates the deprivation. It doesn't have to be a complete taking. That's the position of having received an inquiry saying, hey, do you think the higher folks knew about this? And he goes on, she goes on and makes some further inquiry, is supposed to be guided by those two things, saying, boy, I've got to thread this needle if I'm going to make this inquiry. Well, I think it's important to remember that the investigators in very well a finder of fact could find at a trial that the investigators knew what they were doing when they used that specific language because it does imply all of that baggage that may not be apparent to someone who's not familiar with the system. But the idea that opening an investigation and specifically referencing those regulations implies that they've received some information that places the moral character of Mr. Mudge in question. And you don't think they reasonably could have concluded that the moral character was in question and they want to find out whether he's passed that information on to the next hiring authority? Well, if his moral character is still in question after he serves his suspension. Is his moral character always in question? I mean, this isn't a, yeah, he's done his time and that's all right, but a convicted felon who testifies in court and is going to have his felony conviction touted to the jury as a reason to question that person's credibility. Yes, I understand that his moral character would be in question based on his past acts. Always, right? First of all, maybe always, maybe. Unless it gets, well, I don't know. I assume there's room for some redemption in someone's life. Absolutely. These acts occurred in 1989 and 1991, a significant period of time has passed since this happened. There's never any other allegation about anything like this again. Right. And, in fact, the superintendent hired him. The superintendent hired him and the record shows that she knew about the allegation and it was the investigation, the implication that he had done something else that led her and the school board to not renew his contract. Something else, what evidence do you base that on, that it was something else? The investigation, you say the investigation suggested there was something else. Would you, in addition to the past charges, what was that something else or how do you know that there was something else? So two things, Your Honor. The first being that the school board was aware of his past charge, so the implication that he's under investigation raises the inference that something new has happened. But also there's an affidavit from one of the board members, Robert Herod, I believe that's how you pronounce it, that states that the state investigator's influence was part of the reason that they did not renew the contract for Mr. Mudge. But the affidavit doesn't say specifically that it was something else other than the past behavior. Sorry, what doesn't say there's something else? You are saying, as I understand it, that there's a past behavior, that's a problem, they got over it, good for them. And I mean good for them. And then you say once they came and said there's an investigation, that led people on the board to believe that there was more than what was in the past. It was something else, that's what you said, right? Yes, Your Honor. How do we know they based it on something else rather than either revisiting the other things, some other charge? But you're laying it down, you are attributing what they did to the notion that the investigation, the use of the word investigation led the board or some members of the board to think there was something additional that they didn't know about. Where do we get that from? Well, I suppose it is an inference to some extent, but they hired Mr. Mudge. The board approved his hiring with the knowledge that he had this prior suspension for this grooming charge. So it would . . . But Herodas' affidavit says that the board was told that the district should not be employing him because of his suspension, which is I think the question that Judge Sack has asked, is was there anything other than saying, well, you know, this guy has been suspended before for this grooming stuff. Did she say something else, that we're investigating him for another incident, for example? I don't believe there's any allegation that someone said specifically something else. There is some testimony in the Herodas' affidavit, or Herod's affidavit, and Mr. Mudge also repeats this in his affidavit, that he was told and Mr. Herod was told that Investigator Zugala and told, questioned Superintendent Weaver's decision making in hiring Mr. Mudge based on his suspension at one point, if that's what you're referring to. I see my time's up. Thank you, Mr. Duggan. Thank you. Ms. Clark, you've reserved two minutes. Thank you. So, Your Honor had asked for a case that would guide the investigators, and I don't have a wonderful answer because there is no on-point case law from this circuit or the court. There is a summary order that Apelli cited in his brief to this court, which is the Palkovic v. Johnson case where you have three attempts with identical charges to get the same teacher or educator after two unsuccessful tries, and this court found that that had overstepped the bounds of a reasonable investigation or administrative prosecution. But I don't, unfortunately, have anything better than that because I'm not sure that there is anything out there. We seem to rely on summary orders all the time. That teacher was tenured, too, right? Yes. Palkovic? Yes, Your Honor, yes. And just to respond to a couple of threads from Apelli's argument, there is no clearly established right to use one's license clear from investigation, and Apelli states that there's a right to use it free from unreasonable investigation or unreasonable interference, but there's no clearly established case law that instructs actors on the ground that what was done here would have been unreasonable. And as this court has reiterated as recently as a couple weeks ago in Tooley v. Schwaller, a state statute does not serve as clearly established law, nor can a plaintiff implies that somehow because the property interest comes from state law, that state law has created the property interest in the license, that it can also somehow govern the investigation into the license in a federal court. But, of course, it must be case law from this circuit or from the Supreme Court that clearly establishes. Unless Your Honors have any more questions, I'll rest on the brief. Thank you very much. Thank you. Thank you both. We'll reserve decision and get back to you in due course.